Curia,per

Johnson, Ch.
The question submitted to the consideration of the court is, whether an Ordinary is entitled to hold his office during good behavior, or for four years only, to which it is limited by the Act of 1833.
The very clear view in which Mr. Justice O’Neall, who heard the cause on circuit, has, in his report, presented the question, and the very satisfactory Conclusion at which he has arrived, would seem to supercede the necessity of adding more than our entire concurrence. The zeal and confidence, however, with which the appeal has been prosecuted, has given it a consequence which calls for the deliberate judgment of the court, although we may not be able to add any force or strength to the argument contained in the report.
In 1812, (see Acts of that year, p. 35,) the Legislature passed an Act by which the office of Ordinary was limited to the term of four years. Before that time, the Ordinaries held their offices during good behavior, and were elected by the Legislature. But in 1815, (see Acts, p. 55,) the Legisla *289 ture, by Act, conferred on the people the power of electing the Ordinary, and prescribed the time, place and manner of holding the elections. The case of Hays, relator, vs. Harley; (2 Mills’ Const. Rep. 264,) decided in 1817, grew out of these Acts, and it was held by the Court that the Ordinary was a Judge of an inferior court, and entitled, under the Constitution of, 1790, to hold his office during good behaviour; and therefore the Act of 1812, limiting the term of office to four years, was void. The amendment of the Constitution, finally adopted in 1828, followed. That provides that all “civil officers whose authority is limited to a single election district,- a single judicial district, or part of either, shall be appointed and hold their office” &e., “in such manner as the Legislature, previous to their appointment, may provide.”
Whatever doubts severe criticism may elicit, from the terms employed in this amendment, as to the intention of the Legislature that adopted it — there is no matter of judicial or legislative history better known, than that it grew out of the decision of the Court, in Hays vs. Harley, and some other cases, of the same character, about the samé time, and that the leading object was to enable the Legislature to impose such limitation, on the term of the office of Ordinary, as might be thought expedient. A recurrence to the state of legislation, in relation to civil officers whose powers were limited to the district for which they were appointed; at the time the amendment was adopted, leads irresistibly to the same conclusion, Before that, the Legislature had unlimited power as to the' mode of appointment and term of office of every district officer, except the Ordinary -and Sheriff, whose term of office was limited to four years by the Constitution of 1790; and it cannot be supposed, the terms “all civil officers,” would have been employed, if it had been intended to provide only for the casé of the Sheriff, and they could apply to no other than the' Ordinary. The Act of 1833, limiting the term of office to' four years, and the universal acquiesence in it, ever since;' *290 supplies a legislative construction, and the approbation of the community.
Now I do not intend to insist that this is conclusive: that the intention to do an act, however clear and manifest, would stamp on the act itself a different character from that which it obviously imports : but there is nothing, in the whole circle of human affairs, so well calculated to lead to a correct understanding of a doubtful and equivocal Act, as a knowledge of the object and aim. It is put in requisition in the daily intercourse of men, and is employed as the means of ascertaining the true interpretation of all contracts, compacts, laws and constitutions, as well those relating to the most trivial, as to the most important and solemn subjects.
Having premised thus much, let us examine the amendment, to ascertain whether it does or does not authorize the Legislature to limit the term of office of the Ordinary.
The advocates of this appeal insist on the negative ; and they maintain, 1st. That the powers of the Ordinary are purely judicial, and, therefore, he does not fall within the description “civil officers, whose authority,” &c.; the term, authority, referring to ministerial and not judicial powers. 2d. That he does not come within the description of “civil officers whose authority is limited to a single election district, or judicial district,” &c.; because his authority extends beyond the district for which he is appointed. 3d. That the authority, conferred on the Legislature, is to provide for the manner of appointing and holding the office, and not for limiting the term of office.
The first proposition is, I think, very fully and fairly met in the report of the Circuit Judge. If, as I have already shown, the object of the amendment was to put it in the power of the Legislature to limit the term of office of the Ordinary, the word “authority” would be idle, unless it means jurisdiction or judicial power; for he exercises no other. That, too, is its grammatical sense. DuPonceau, in his treatise on *291 Jurisdiction, (p. 21,) says that jurisdiction, in its general sense, is the power to make, declare and apply the law. When confined to the judiciary department, it is what we denominate judicial power, and, according to the lexicographers, the term “authority” is often used to express “legal power.” (Johnson’s Die., quarto ed.) In the Act of 1799, which provides lor the establishment of the courts of Ordinary, and to which I shall have occasion to refer more particularly, we have an example, where the word “powers” is used as a substitute for “jurisdiction,” as applied to the Ordinary, in which it is provided that he shall exercise “all the powers of the court of Ordinary.” So that, when applied to the judiciary department, the terms “jurisdiction,” “power” and “authority,” all mean precisely the same thing.
The Act of 1799 is, in itself, a decisive refutation of the 2d proposition. By that, (after providing for the establishment of courts of Ordinary in each district,) it is declared “that the judges of the said courts of Ordinary shall be chosen by joint ballot of the two houses of the Legislature, which judges shall administer, each in the respective district for which he shall be appointed, all the powers of the court of Ordinary.”
Now, it is not pretended that the Ordinary has jurisdiction of causes arising, or of persons residing, without the limits of his district; and the only examples given of his authority extending beyond it, are the powers given him, by the Act of 1799, to enforce the attendance of witnesses, (which, although not expressed, may be fairly construed to extend beyond the district,) the power to compel the production of wills that have been suppressed, and a few others of like character. But these are incidents or accessaries to, and not in themselves, substantive judicial powers. They could not be exercised, unless there existed a cause, of which the Ordinary had jurisdiction, and the jurisdiction would, itself, be a nullity, if there was no authority to enforce the attendance of witnesses to procure testimony. In short, without it, there could be no such *292 thing as a local limited jurisdiction. The jurisdiction of the court of Admiralty is limited to causes arising on the high seas: that of the district courts of the United States, to, the State in which they are held; yet they may collect evidence from all quaters, their judgments and decrees are evidence every where, and the operation of their final process, unless otherwise provided, runs throughout the whole extent of the state or kingdom in which they are established; and no one ever yet supposed that their judicial powers were thus, extensive.
The third proposition has more plausibility. “Shall be appointed and hold their office,” &(?., “in such manner as the Legislature may provide,” does not necessarily impart the pow,er to regulate the term of office, but rather the manner of appointment. In its grammatical construction, however, it refers to both. Now, that the office itself has the right to exercise its powers, and to enjoy its emoluments, is an abstraction which is inaccessible to the physical senses; and to suppose that it was intended, by the amendment, to authorize the Legislature to prescribe the manner of holding it, is irreconcileable with common sense. That it could not have been intended to apply to the mere formula connected with the office is obvious, for over that the Legislature had ample pbwers. Something else must, therefore, have been intended.
We have before seen that the limitation of the term of office of Ordinary was the leading object of the amendment, of which subsequent legislation and public acquiesence are an imposing construction : that, without' that construction, all the leading objects of the amendment must fail; and we have no room to doubt, however inappropriate the term used, it was intended to authorize the Legislature to limit the term of office of the Ordinary.
The motion must therefore be dismissed.
The whole court concurred.